

**U.S. Department of Justice**
*United States Attorney*
*District of New Jersey*

*402 East State Street, Room 430*
*Trenton, New Jersey 08608*

August 5, 2025

**VIA ECF**

The Honorable Zahid N. Quraishi
United States District Judge
Clarkson S. Fisher Building & U.S. Courthouse
402 East State Street
Trenton, New Jersey 08608

    Re: *United States v. Jashawn Robinson*
       Crim. No. 24-424 (ZNQ)

Dear Judge Quraishi:

  In moving before the Court for the "immediate production of the grand jury transcript," Jashawn Robinson ("Robinson") previews his future intent to file a motion to dismiss the Indictment based upon violations of the Speedy Trial Act ("STA") and Interstate Agreement on Detainers Act ("IADA"). D.E. 34 at 1. Robinson implores the Court to pierce the veil of secrecy and disclose the grand jury transcript in his pursuit to establish prejudice for his future motion to dismiss. In support of his current motion, Robinson alleges that "[had] he been served with the [federal carjacking] Complaint, he would not have entered a guilty plea in New York State Court to related charges on January 18, 2023. Consequently, if the Government relied on Mr. Robinson's guilty plea in its grand jury presentation, the actual and significant prejudice to Mr. Robinson is established on its face." *Id.* at 2. For the reasons set forth below, Robinson's motion should be denied.

## BACKGROUND AND PROCEDURAL HISTORY

  The following is the timeline alleged by the United States based upon the evidence in this case:

| **August 6, 2021** | Suspect-1, driving a gray Honda, struck a blue Audi ("the blue Audi") in New York City while Victim-1 was sitting therein. As Victim-1 exited the blue Audi to check the damage to the vehicle, Suspect-1 entered the blue Audi and drove away with the vehicle. |
|---|---|

| | |
|---|---|
| | The blue Audi was reported stolen to NYPD. This remains an open investigation; no one has been charged. |
| **August 25, 2021** | Robinson, driving the blue Audi, discharged a firearm ("Firearm-1") at least four times into a public housing complex in Queens, New York ("the New York shooting"), and drove away. NYPD recovered spent shell casings at the scene. No one was injured. |
| **August 28, 2021** | Robinson was driving the blue Audi in Elizabeth, New Jersey with his girlfriend ("Individual-1") when it sustained tire damage. Robinson and Individual-1 ditched the blue Audi in Elizabeth and took an Uber to a motel in South Brunswick, New Jersey ("the motel").<br><br>Robinson and Individual-1 checked into the motel for the night. |
| **August 29, 2021** | Robinson committed the armed carjacking in the motel's parking lot ("the New Jersey carjacking"), discharging Firearm-1 in the air and stealing the Ford Mustang ("the Mustang") from Victim-2 and Victim-3. |
| **August 30, 2021** | Robinson is charged by the state for the New Jersey carjacking and related weapons offenses (the "Middlesex County complaint"). |
| **September 27, 2021** | Robinson is arrested in New York in the Mustang. Robinson first attempts to drive away in the Mustang, nearly running over a Deputy U.S. Marshal.<br><br>Robinson gives a post-arrest post-*Mirandized* video-recorded statement in New York where, in sum and substance, Robinson is advised of the pending charges in New Jersey against him related to the theft of the Mustang and the discharge of a firearm during the commission of that crime.<br><br>Robinson is charged in New York for possession of the stolen Mustang ("the New York stolen property crime") and obstruction-related offenses. Thereafter, Robinson is ordered detained and begins his pretrial detention at Rikers. |
| **July 14, 2022** | Robinson is arrested and charged in New York for assault- and firearm-related offenses regarding the New York shooting ("the New York shooting crime") that occurred in New York on August 25, 2021, four days prior to the New Jersey carjacking. |
| **September 14, 2022** | Robinson is charged in New Jersey federal district court by criminal complaint with one count of carjacking and another for discharging a firearm during and in relation to the New Jersey carjacking ("the federal Complaint"). A federal arrest |

| | |
|---|---|
| | warrant is issued. Shortly thereafter, the Middlesex County complaint was dismissed based upon the federal adoption. |
| **September 15, 2022** | The federal arrest warrant is emailed by an ATF case agent to personnel at Rikers, thereby lodging the arrest warrant against Robinson as a detainer. Robinson is not at this time arrested on the federal complaint. There is no record indicating Robinson was advised of the federal complaint and detainer.<br><br>At that time, because of a policy change occasioned by COVID-19 safety precautions, the U.S. Marshals Service would not honor a writ to produce Robinson from Rikers for his initial appearance on the federal complaint (this policy was lifted shortly thereafter). |
| **January 18, 2023** | Robinson pleads guilty in Queens County Supreme Court to the New York stolen property crime and the New York shooting crime. |
| **February 8, 2023** | Robinson is sentenced in Queens County Supreme Court to a period of 364 days' imprisonment for the New York stolen property crime concurrent to a period of 3 years' imprisonment for the New York shooting crime ("New York State sentence"). |
| **March 9, 2023** | Robinson enters Sing Sing Correctional Facility ("Sing Sing") to serve his New York State sentence. His maximum date of release is March 27, 2025. |
| **April 6, 2023** | Personnel at Sing Sing advise Robinson of the detainer by providing him with a copy of the arrest warrant and a letter sent to the New Jersey federal district court regarding these charges. However, there is no indication that anyone at Sing Sing specifically advised Robinson of his right to a speedy trial at that time. |
| **June 27, 2024** | Robinson is charged in a two-count Indictment returned by a federal grand jury sitting in Trenton for carjacking and discharging a firearm during and in relation to the New Jersey carjacking ("the federal Indictment"). |
| **July 10, 2024** | In response to a writ issued by the Court, Robinson was produced by Sing Sing for an initial appearance and arraignment on the federal Indictment. Upon his arrival to federal court, Robinson was arrested on the federal arrest warrant. |
| **March 27, 2025** | Robinson completed the New York State sentence and rolled over into U.S. Marshal's custody on the federal Indictment.<br><br>Robinson is now detained at the Essex County Correctional Facility. |

## **LEGAL STANDARD**

It is well-established that the proper functioning of the grand jury system requires the secrecy of grand jury proceedings. *See, e.g.*, *Douglas Oil Co. v. Petrols Stops Northwest*, 441 U.S. 211, 218 (1979). There are several distinct interests served by safeguarding the confidentiality of grand jury proceedings:

> First, if preindictment proceedings were made public, many prospective witnesses would be hesitant to come forward voluntarily, knowing that those against whom they testify would be aware of that testimony. Moreover, witnesses who appeared before the grand jury would be less likely to testify fully and frankly, as they would be open to retribution as well as to inducements. There also would be the risk that those about to be indicted would flee, or would try to influence individual grand jurors to vote against indictment. Finally, by preserving the secrecy of the proceedings, we assure that persons who are accused but exonerated by the grand jury will not be held up to public ridicule.

*Id.* at 218-219. These interests are particularly sacrosanct in cases involving victims and violent crimes.

Under Rule 6(e)(3)(E)(i) and (ii) of the Federal Rules of Criminal Procedure, disclosure of grand jury proceedings to someone other than a government attorney is authorized only when so directed by the court "preliminarily to or in connection with a judicial proceeding" or "at the request of the defendant upon a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury."

While courts are categorically reluctant to lift unnecessarily the veil of secrecy from the grand jury, "it has been recognized that in some situations justice may demand that discrete portions of transcripts be made available for use in subsequent proceedings. Indeed, recognition of the occasional need for litigants to have access to grand jury transcripts led to the provision [. . .] that disclosure of grand jury transcripts may be made 'when so directed by a court preliminarily to or in connection with a judicial proceeding.'" *Douglas Oil Co.*, 441 U.S. at 220. In *United States v. Procter & Gamble Co.*, "the Court sought to accommodate the competing needs for secrecy and disclosure by ruling that a private party seeking to obtain grand jury transcripts must demonstrate that 'without the transcript a defense would be greatly prejudiced or that without reference to it an injustice would be done.'" *Id.* at 221 (quoting *United States v. Proctor & Gamble Co.*, 356 U.S. 677, 682 (1958)). Only in

those limited cases where particular need is shown will the secrecy of the grand jury proceedings be lifted "discreetly and limitedly." *Procter & Gamble Co.*, 356 U.S. at 683; *Dennis v. United States*, 384 U.S. 855, 870 (1966) (same); *Pittsburgh Plate Glass Co. v. United States*, 360 U.S. 395, 400 (1959) ("The burden . . . is on the defense to show that 'a particularized need' exists for [grand jury] minutes that outweighs the policy of secrecy."); *United States v. McDowell*, 888 F.2d 285, 289 (3d Cir. 1988) ("[t]o support a motion for judicially ordered disclosure of grand jury testimony, a party must show a particularized need for that information which outweighs the public interest in secrecy.") In demonstrating a particularized need, "mere speculation that improprieties may have occurred will not suffice." *United States v. Budzanoski*, 462 F.2d 443, 454 (3d Cir. 1972).

Furthermore, if "such a need is shown, the district court 'must [then] weigh the competing interests and order so much disclosure as needed for the ends of justice.'" *McDowell*, 888 F.2d at 289 (quoting *In re Grand Jury Matter (Catania)*, 682 F.2d 61, 62 (3d Cir. 1982)). "In undertaking such a determination, the district court 'necessarily is infused with substantial discretion.'" *Catania*, 682 F.2d at 64 (quoting *Douglas Oil Co.*, 441 U.S. at 223). "While it is apparent that the Court has the power to grant a motion for inspection of the Grand Jury minutes, that power will be exercised only in cases of extreme compulsion. Where there is no allegation of an improperly constituted body, nor of fraud, misconduct or corruption and no positive allegation that there was no evidence of any sort before the Grand Jury, such power will not be exercised." *United States v. White*, 104 F. Supp. 120, 121 (D.N.J. 1952) (quoting *United States v. Nat'l Wholesale Druggists' Ass'n*, 61 F. Supp. 590, 593-94 (D.N.J. 1945)).

## **ARGUMENT**

Robinson makes this motion to disclose the grand jury transcript in an effort to accumulate some evidence to support his future motion to dismiss the Indictment. He previews that, ideally, he wants to be able to argue that his client suffered prejudice because (1) had he been served with the federal Complaint, his client would not have pled guilty to the New York stolen property crime and (2) if the Government relied upon Mr. Robinson's guilty plea to the New York stolen property crime during its grand jury presentation, that would be evidence of actual prejudice.

But these arguments fall far short of the defendant's burden to show a particularized need for this protected information. Robinson's search for evidence of prejudice, to be used in a future motion to dismiss the Indictment based on STA and IADA violations, is inadequate to obtain grand jury disclosures. Indeed, Robinson is not challenging the grand jury presentation or the validity of the pending federal Indictment at all; he is asserting a speedy trial violation. Notably, Robinson's motion

fails to mention even a hint of irregularity in the grand jury presentation itself, but instead advances arguments based on conjecture and speculation.

First, Robinson's claim that he would not have pled guilty to the New York stolen property crime if he knew about the federal carjacking Complaint is unconvincing on the merits. The facts underlying his guilt to that crime are overwhelming. When law enforcement surrounded the stolen Mustang, Robinson was sitting in the driver's seat. Robinson was alone in the Mustang and in possession of both the vehicle and its key. Robinson then accelerated and tried to drive away, almost running over a Deputy U.S. Marshal and damaging the Mustang in the process. Robinson ultimately pled guilty in New York to his possession of stolen property – the Mustang – a misdemeanor crime, because he was in possession of stolen property at that time, as captured on video[1] and witnessed by numerous law enforcement officers. As the plea transcript indicates, Robinson pled guilty under oath before the Honorable Toni M. Cimino, Justice of the Supreme Court of the State of New York, Queens County, to that crime because he was, in fact, guilty. *See* Plea Transcript, D.E. 34, 13:24-15:12. Furthermore, Robinson's sentence to 364-days in jail for the New York stolen property crime was completely subsumed by his concurrent 3-year sentence for the New York shooting crime.

Moreover, Robinson's claim of ignorance as to the eventual federal charges is also befuddling. While it is unclear what Robinson *specifically knew* about the status of the New Jersey charges prior to his arrival at Sing Sing[2] to serve his New York State sentence, during Robinson's post-arrest statement in New York, on September 27, 2021, he was directly advised by the NYPD Detective, on video, that there were charges pending in New Jersey against him related to the theft of the Mustang and the firearm discharge during the commission of that crime.[3] Accordingly, asking this Court to believe that Robinson would not have pled guilty – despite the mountain of evidence against him, the windfall sentence he negotiated, and his substantive knowledge of the outstanding charges – is farfetched.

Robinson's claim of prejudice – *if* the Government *relied upon* Robinson's guilty plea to the New York stolen property crime during its grand jury presentation, that would be evidence of actual prejudice – is the exact sort of speculation that Courts routinely conclude is insufficient to warrant lifting the veil of secrecy. Such a conclusion requires the Court to first accept as true Robinson's first conjecture (that

---

[1] This video, as well as the video of the New Jersey carjacking, were provided to the defense in discovery.

[2] On or about April 6, 2023, Robinson was provided with a copy of the federal arrest warrant and advised of the pending federal charges. *See* D.E. 12, Ex. B.

[3] This video-recorded statement was provided to the defense in discovery.

6

he would not have pled guilty), and second, Robinson's speculation that the Government relied upon his guilty plea in its grand jury presentation. Given the volume of evidence supporting Robinson's guilt, specifically including Robinson's arrest *in the carjacked Mustang*, the Government fails to see how a mention of an uncontroverted fact could be construed as prejudicial enough to warrant disclosure of secret proceedings.

Finally, and most fundamentally, in order to succeed in his request to obtain the grand jury transcripts, Robinson must make a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury or that the ends of justice so require, and that the need for disclosure is greater than the need for continued secrecy. In plain text, Robinson tells this Court that he will move to dismiss the indictment based upon the violations of the STA and IADA. And while the Government will certainly respond in full to that future motion, it is compelled to restate that dismissal of the Indictment is explicitly *not* a remedy to the inadvertent notice violation under the IADA, or for a violation of § 3161(j) of the STA. *See* D.E. 12. Accordingly, Robinson cannot make the required showing that grounds may exist for a motion to dismiss.

Between the largely uncontroverted procedural history of this case, the voluminous Rule 16 material provided to the defense, and the Government's letter to the Court at D.E. 12, the Government submits that the defense can "determine the nature and extent of the STA and IADA violations when filing its pretrial motions," D.E. 34 at 2, without the Court taking the extraordinary measure of ordering disclosure of grand jury material. Robinson's motion fails to demonstrate that "without the transcript [the] defense would be *greatly prejudiced* or that without reference to it *an injustice would be done*." *Proctor & Gamble Co.*, 356 U.S. at 682 (emphasis added). In light of the above, Robinson has not demonstrated a particularized need which outweighs the policy of secrecy. As such, Robinson's motion should summarily be denied.

Notwithstanding, if the Court's *in camera* review of the grand jury material would aid the Court in considering Robinson's motion, the Government will of course comply with the Court's order.[4]

Respectfully submitted,

TODD W. BLANCHE
United States Deputy Attorney General

ALINA HABBA
Acting United States Attorney
Special Attorney Acting Under
Authority of 28 U.S.C. § 515

By:  s/ *Tracey Agnew*
TRACEY AGNEW
Assistant United States Attorney

cc:  Ernesto Cerimele, Esq., via ECF
Emma Enright, Esq., via ECF

---

[4] The Government notes that it does not usually obtain copies of the legal instruction portion of a grand jury transcript, but instead obtains only copies of the witness testimony. Accordingly, were the Court to order an *in camera* review in this matter, specifically including the legal instruction(s), the Government would need to request that the legal instructions provided to the grand jury be transcribed.

8